The next item on our calendar is Empire Merchants, LLC v. Reliable Churchill, LLLP, and others. And LTT Whiskey is on submission. You may proceed. Thank you, Your Honor. Good morning. Caitlin Halligan on behalf of Empire. The complaint here alleges that defendants engaged in a classic bootlegging scheme designed to break into New York's closed market and steal sales from Empire, which is a licensed New York liquor wholesaler with exclusive contracts to distribute in the New York metro area. The district court dismissed the complaint because it believed Empire had not alleged proximate cause or a scheme to defraud. It erred on both counts. Let me start with proximate cause. Empire was required to allege that it is a direct victim. In other words, the defendant's racketeering led directly to Empire's injury. It did exactly that. It alleged in detail that every case of liquor smuggled from Maryland to New York constituted a lost sale by virtue of both the exclusivity contracts that Empire has and New York's licensing scheme, a lost sale that Empire alone was entitled to make. The goal of this scheme... Can I ask about the exclusive distribution rights? What the complaint says, what is the source of those rights? Is this simply an agreement by the distributors not to sell to anyone other than Empire, not to deal with anyone other than Empire for distribution in New York? I mean, the wholesalers. My understanding is that it is an agreement between the manufacturers and the wholesalers, and Reliable Churchill as well has a number of these exclusivity contracts, albeit in Maryland, not in New York, where it is not licensed to distribute liquor at all. So it's between the manufacturers and the wholesalers. The district court dismissed for three reasons, each of which is independently erroneous. Let me start with this notion that Empire somehow disclaimed reliance on the tax evasion that was committed here. The tax evasion was what made this scheme profitable. Empire alleged that in detail. The district court, raising a point the defendants had not made at all in their motion to dismiss, looked not at the complaint but at several pages in Empire's opposition to the motion to dismiss, pages 27 through 31, in which Empire explained in response to questions about ONSA that it was not seeking to recover lost taxes, that that was an injury sustained by the state, that the injury here was distinct. There was no disclaimer of the consequences of the tax evasion and the way in which it made this scheme work in terms of the revenue that it put on the table. I take your point. Why doesn't that very point, though, suggest that your clients' injuries are derivative of those of New York? As you say, these New York retailers would not have had any interest in this scheme except for the ability to evade the taxes. And the money they pocketed was the state tax money. So it seems to me your client may have been injured by the scheme, but it is not directly injured. So what am I missing? So that brings us to the district court's second error, which was its misreading of ONSA and its disregard of Bridge. What the district court said is that there was no proximate cause under ONSA for essentially the reason that Your Honor just laid out. ONSA and the allegations here are completely different, and let me lay out why that is. The market in ONSA was an open market, not closed like the market here by operation of law and contract. There were lawful competitors that were at play here. Here, reliable is not a lawful competitor at all. The participants in this scheme are effectively wholesaling liquor in this state completely illegally because they are not complying with the state laws that require them to register as a wholesaler, to report the liquor that they sell, and to pay taxes. So this concern that motivated the court in ONSA, when this court's decision in ONSA came up to the Supreme Court, this court had said competitive disadvantage is sufficient to create proximate cause. The Supreme Court said it's not enough, you must show that there is a direct injury, and it explained that one of the concerns was that there could be overlap between the antitrust laws and RICO. That's completely absent here because there is no lawful competition. In addition, the injury here could not be more direct. It's a very unusual fact pattern here because unlike cases like ONSA, where you have a question of using some profits from a scheme in a way that allows one competitor to outdo another, here you have both the exclusivity contracts and the licensing regime, which mean that there is necessarily, every time a bottle comes into New York that was a bottle that Empire has a contract to sell, that's necessarily a lost sale for Empire. So in this regard, it's not only distinct from ONSA, but maybe sui generis. The notion that because there is tax evasion at play here, there can be no other direct victim has to be wrong for a few reasons. First of all, if you look at the structure of the statute itself, RICO lays out a number of predicate acts, we counted 12 I believe, in which the government can be directly injured. If Congress intended not to allow a private cause of action for any of those 12 predicate acts, it probably would have drafted 1964 differently. It did not. It simply said for any predicate act, you have a cause of action if you're injured by reason of the racketeering activity. And secondly, this court and other courts have never suggested that there can be only one direct victim, that if the government is a direct victim, that there can be no others. What the district court also did was it pointed to these intervening factors  In ONSA, there were what the court called serious discontinuities between the fraudulent conduct and the injurious conduct. On the one hand, the tax dollars that were gleaned by virtue of the evasion could have been used to lower prices. They could have been used to do a number of other things. The sales could have been lost because of the lower pricing, could have been lost for a number of other reasons. Those intervening factors are not present here. It wouldn't be permissible on a motion to dismiss to speculate about them anyway. But this is what Judge Posner, in remand on the Bridge case, called throwing sand in the district court's eyes. The notion that somehow the New York retailers are holding this liquor for some reason other than to bootleg it is exactly the kind of implausible speculation that Judge Posner said cannot defeat proximate cause. There's also a tremendous reliance here by Reliable on the notion that the New York retailers, much like Reliable says, the purchasers, the third-party independent purchasers in ONSA, are somehow making independent decisions and that disrupts the chain of causation. That is not the case. The purchasers here are the New York retailers. They are defendants in this case. They are participants in this scheme. So the notion that they are in the same shoes as a purchaser who's buying steel products from Ideal or National has no support at all. I'd also like to touch briefly, I see my time is almost up, on the scheme to defraud that was established here. This court has said in Tropeo that smuggling, which is the scheme that's alleged here, is by definition a scheme to defraud. The court has explained why that is. A Terzi lies that out now, Justice Sotomayor explains that. In addition, there are numerous guilty pleas with respect to wire fraud. And so there can really not be any question here but that there was a scheme to defraud. Can I just ask if you took the sales tax out of it? Yes. Let's assume the New York retailers paid their sales tax but they were still smuggling, helping to smuggle liquor into New York and they were still selling it. What is the money or property, what is the wire fraud scheme then? Could you still charge this as a wire fraud without the sales tax? I think so, and that's because the tax evasion simply happens to be the mechanism that generates the money. The property that would be taken would be the right to the sales. By the same token, if there were- Where does the right to the sales come from? Back to these exclusive distributorship contracts? Yes, that's correct. And by the same token, Your Honor, I realize I'm over if I can just finish responding. If there were other innocent New York retailers who were not involved in the scheme and they said, the folks down the street who are participating in the scheme and they can undercut me because of the dollars they get from this scheme, if they sued, then this case would be much more like ONSA. So, too, if there were no exclusivity contract or licensing scheme which prohibited Reliable and the other defendants from penetrating this market and flooding it with illegal sales. So it's those factors that make this quite unusual and distinguishable. Thank you. Thank you, counsel. We reserve two minutes for rebuttal. Good morning, Your Honor. Sean O'Shea for Reliable, and it's- So, Mr. O'Shea, we know that Reliable is doing something bad, right? We're not doing anything bad, Your Honor. Well, I mean, they took Maryland liquor. They told the people buying it to sell it in New York how to take off the Maryland tax certificates with blow torches, correct? Well, Your Honor, let's break it down. The complaint alleges that we did what we normally do in the normal course of business. We sold to Cecil County retailers in Maryland, sometimes at discounts, which we were required to do under Maryland and federal law. We could not discriminate on discounts. We got paid by check. There was an allegation that we were asked about removing a sticker. That sticker has no force of law, Your Honor. That sticker is an internal routing sticker to Reliable. Everything that is alleged in the complaint, and Judge Ross saw right through this, is standard business practice by a wholesaler in Maryland. Standard business practice? Yes, Your Honor. To sell liquor from Cecil County, Maryland to New York in derogation of Empire's exclusive contract? Well, Your Honor, that's not quite what the complaint says. We never sold to any New York retailer. We sold to retailers in Cecil County, Maryland. And they? They then resold the liquor, Your Honor, is the allegation. You would throw the Maryland retailers under the bus and agree they were breaking the law. Some went to jail, right? Well, Your Honor, the question is whether there's a cause of action, a RICO cause of action, against us that could include us. But, Your Honor, we are not responsible for what they did. And in any event, it's not a RICO cause of action. Because, again, one place why I agree with my adversary here is that the central issue on this appeal is whether there's proximate damage causation. That's the central issue. Judge Pooler's question was, somebody must have been breaking the law here, and you would finger the Maryland retailers as the miscreants, right? Well, if someone's breaking the law, law enforcement is there to enforce that law. In this case, for example, the U.S. attorney in Maryland enforced the laws to some people and dropped the cases to others. So there is no allegation against Reliable, nor was there ever an allegation against Reliable that we had broken the law. But at this stage, we take the allegations and the complaint as true. So those allegations suggest you participated in a scheme with the Maryland retailers and the New York retailers to bring liquor into New York State, evading New York State taxes and harming Empire. So why is that not a properly pled RICO?  And it goes to some of the questions you put to my adversary, and that is whether there's direct proximate damage under the allegations taken as true. And the problem for my adversary is what they're substituting for that damage causation are allegations of motive, that it was our ultimate motive to harm them. But the reality is, in order to get to the damage, their damage, as Your Honor pointed out, is derivative of the damage. Taking all their allegations is true, and Judge Pooler, we disagree with them wholeheartedly, but taking them all is true. Their damage, such as it is, is derivative because it relies on tax harm that is suffered by New York State, the failure to pay excise tax. Let's take the taxes out of the equation and just say that the conspiracy here was to increase your client's market share, to sell more, and New York is a big market. Why wouldn't that be a properly pled wire fraud? Well, because you have to go back to what Judge Ross did below, where she said, okay, let's look at the predicate acts as alleged. Where are the mail frauds and wire frauds? At whom are they directed? Who is deceived? And what is the damage? My adversary said a minute ago that, I believe I heard it right, that Judge Ross erred when she said that she took them at their word in their briefing. This is in their briefing at ECF 145 at page 27. They said in their briefing that the court shouldn't rely on the quote, unquote, false narrative that this case is about sales taxes. So they were doing the rhetorical tap dance in front of Judge Ross, changing their claim in order to survive a motion to dismiss. The reality is, Your Honor, if you look at the underlying racketeering acts, the mail fraud and wire fraud, there is no deception of, in fact, there are no representations made at all to Empire. It would be at best, as Judge Ross said, a tortious interference with contract claim. But it's certainly not a criminal claim, certainly not a racketeering claim. And that's where my adversary has gone wrong in claiming that, oh, gee, we're harmed, we're left without redress. There's redress here in a state court if they want to make that allegation that there's been a tortious interference with their contractual rights. The other thing this court has to consider is that this so-called closed market is closed by their Ipsy Dixit. They claim that private contractual rights give them the lawful right to close the market. But if you look at the New York State tax law, and in particular Section 140, Mike, 127.5, which deals with the payment of excise tax, and the reason I bring this up now, because this was brought up in my adversary's reply brief, in 127.5, it's not the distributor that has the exclusive right to pay this tax. In fact, if the distributor doesn't pay it, the retailer is on the hook for it. So there's no closed market here, either by government regulation or the government taxing regime. That's just a false narrative. Can that really be true? I read ONSA. You read ONSA. Either one of us could go open up an ironmongery shop in Queens tomorrow, if we wanted to. What shop, Tara? Ironmongery. ONSA involves a sale of steel. A sale of steel. Either of us could do that. But could I open up a retail liquor store without a contract with the manufacturer and start to buy scotch and sell it by the case? Yes. Under the law, well, you would have to be licensed under the state licensing regime. But would you need necessarily a contract with Empire? No. There are numerous ways under the law where you could import liquor from, you could open a wine store and get wine from out of state. You could do auction sales. There are a number of ways you can do it. You can get your liquor from Southern Glacier, which is a competitor of Empire. Empire is not the sole source here, Your Honor. Is it the sole source for particular brands? It is the sole source under contract for particular brands. But, Your Honor, let's say those brands were brought in from, say, New Hampshire, which is another state-owned distribution where they charge no excise tax. A lot of smuggling across the border from New Hampshire. Those brands could have come from there as well. So that's the problem with causation that gets to the ansa concern, Your Honor, and that is how are you going to divvy up damages? You've got real concerns about certainty of damages and damage calculations,  By the way, I'm told my statute site was wrong. It's 427 of Section 5. Just, I have a few minutes, and I want to turn to other grounds that even if, Your Honors, have these concerns about Judge Ross's decision, there are other grounds that Judge Ross did not reach below that this court could decide that this RICO cannot stand. One of the main ones is statute of limitations. This case was filed in September of last year, September 2016. So a four-year statute would mean what did Empire know before September 20, 2012? Well, they knew that according to their complaint, and this is at the Joint Appendix 250, that there were conspicuously reduced sales in 2009. They knew in 2010 when Nino Magliocco, their chairman, testified before the New York State Senate on bootlegging into New York. In 2011, five years before this complaint was filed, and this is an industry study attached to their complaint, five years before there's an industry analysis cited about highlighting the bootlegging problem into New York. In 2011, there's a government forfeiture complaint. The same government forfeiture complaint that had to do with the indictment of RNDC, our competitor in Maryland, that was in 2011, a year before they filed, and that was on the very same scheme that's attached to their complaint. Also, in 2012, their own distributor, Brescomb Barton, which is wholly owned by Nino Magliocco and his brothers, settled an action brought by Connecticut and brought by New York for smuggling into New York. So the idea that they didn't know, while all the time sitting on their rights about smuggling into New York, is fanciful. That's another reason why this court can affirm Judge Ross below. The other problem that they have that hasn't been examined, but what we raised below Judge Ross did not get to, is the failure to plead enterprise. There is no common purpose. There's no sharing of proceeds. There's no operational control alleged here. For example, RNDC, which is our competitor in Maryland, they claim that RNDC was a participant in this RICO enterprise, but give no motive as to why RNDC would conspire with Reliable Churchill to harm Empire, particularly when they say in their complaint that RNDC's smuggling, such as it was, did not harm us. Also, if you look at their complaint, Your Honors, nowhere do they cite what is the motive in the sharing of proceeds between New York retailers and Cecil County retailers. What you have here is everybody acting in their own interest, and that is not RICO. And that's another alternative way that this court can affirm the decision below. I see I'm over my time. I apologize. Thank you, Counsel. Just a few points in response. I'll let you make a few points, but I have a question. Please, first, Your Honor. Why didn't you bring this case as a tortious interference case? Because we're entitled to bring it under RICO. This is exactly the kind of conduct that Congress looked to get at when it enacted RICO. It is an invasion of lawful business activity by criminal activities, and that's exactly what RICO covers. So we have fully alleged the elements, and we would like to proceed and be able to develop the proof in order to show that, in fact, there is a viable RICO claim here. A couple of other comments in response to my adversary's points. Reliable was deeply involved in this scheme, as we allege, in particular at paragraphs 91 to 105. It recruited, it incentivized, and it helped conceal the liquor as it was smuggled from Maryland to New York. With respect to direct injury, we allege that in detail. And let me say, not only is the injury to Empire not derivative, if anything it is antecedent to the injury sustained by the government because it's when the liquor comes across and goes not to the wholesaler but straight to the retailer that the point at which the tax should be paid is completely omitted. With respect to who is deceived, as you and the court have held, Judge Livingston, Greenberg is very clear that as long as the government is deceived, it matters not who else is deceived, but we have also alleged that Empire is deceived. With respect to the tax law, any wholesaler must be licensed, registered, and pay taxes. The exclusivity contracts have also been breached here, but the laws have been violated as well. We lay those provisions out in our reply brief. With respect to the numerous other grounds that opposing counsel has cited, these issues around the statute of limitations are not appropriate for determination at this juncture, as this court has held in Bill. They need to await further factual development. Finally, with respect to damages, we believe we will have no problem proving up damages in this case. Reliable has, in fact, said repeatedly that it has cooperated with the government in its investigation of the tax evasion, and to the extent that's the case, we assume there are sufficient records that will allow us to document the lost sales that Empire sustained, and we look forward and hope that this court gives us the opportunity to do that on remand. Thank you. Thank you. Thank you both. Lively case. We'll reserve decision.